FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2005 DEC 13 AM 8: 27

CLERK _L. Feborders_
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| KATHERINE LYNN SPARKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 104-154 |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Katherine Lynn Sparks appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED** and that a final judgment be **ENTERED** in favor of the Commissioner.

### I. BACKGROUND

Plaintiff applied for SSI payments on April 16, 2001. Tr. 16. She initially alleged disability due to heart problems, osteoarthritis, spinal disc stenosis, and sleep apnea. Tr. 95. In her brief to the Court, she also asserts that obesity and incontinence contribute to her

disability. Pl. Br. 5-7. The Social Security Administration denied plaintiff's applications and her request for reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). After a hearing at which plaintiff, represented by counsel, testified on her own behalf, the ALJ issued an unfavorable decision dated October 9, 2002. Tr. 16-22.

Applying the five-step sequential process required by Title 20, Code of Federal Regulations, Sections 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in Regulations Sections 404.1520(b) and 416.920(b).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant is unable to perform any of her past relevant work but retains the residual functional capacity to perform light exertional level work with "occasional stooping, twisting, and kneeling; no crawling, climbing, or balancing; occasional reaching overhead; and occasional fine dexterity with the right dominant hand. She should be given a sit/stand option."[1]

---

[1]Light work involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

> 5. Based on the claimant's age, education, and work experience, and the testimony of the vocational expert, there are a significant number of jobs in the national economy that the claimant could perform, including unskilled light jobs such as facility attendant, bus monitor, and pizza delivery person. Thus, the claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

Tr. 21-22.

When the Appeals Council denied plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. Tr. 5-7. Plaintiff filed this civil action requesting a reversal of that adverse decision. Plaintiff argues that the ALJ failed to consider plaintiff's obesity and incontinence in making his disability determination and that his determination was not supported by substantial evidence.

## II. THE STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial

evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. Failure to Consider Obesity and Incontinence

Plaintiff first argues that the ALJ failed to consider her obesity and incontinence in reaching his disability determination. Turning first to plaintiff's obesity, medical records submitted in her administrative proceedings indicate that she is four feet and four inches tall and weighs approximately 160 pounds. Tr. 234. Her body mass index ("BMI") is approximately 41.7.[2] According to Social Security Ruling ("SSR") 02-1P, "[t]he Clinical Guidelines recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40."

Yet high BMI is not always correlated to excess body fat; "it is possible for someone whose BMI is below 30 to have obesity if too large a percentage of the weight is from fat. Likewise, someone with a BMI above 30 may not have obesity if a large percentage of the weight is from muscle." SSR 02-1P. In this case, plaintiff's BMI would place her in the Level III, "extreme obesity" category. Without more information regarding plaintiff's health and appearance, however, the Court is unable to determine conclusively whether plaintiff is significantly obese.

The administrative record is largely devoid of any reference to obesity. The ALJ did not mention obesity in his findings. Plaintiff did not mention obesity as condition

---

[2]BMI is calculated by dividing a person's weight, in kilograms, by the square of a person's height in meters. Plaintiff does not cite, and the Court is unaware, of any calculation of plaintiff's BMI in the record.

5

contributing to her physical limitations in her application for disability or during her hearing with the ALJ. The Court is unable to find, and plaintiff does not cite, any clinical diagnosis of obesity in the record.[3] Yet plaintiff urges the Court to remand the case to the ALJ for consideration of her obesity.

SSR 02-1P addresses circumstances where the record is devoid of an obesity diagnosis:

> When the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI, we may ask a medical source to clarify whether the individual has obesity. However, in most cases we will use our judgment to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity. Generally, we will not purchase a consultative examination just to establish the diagnosis of obesity.

The Ruling leaves open the question of whether the ALJ should expound upon his obesity determination in the record when the issue has not been raised by a claimant. Requiring an ALJ to do so would eliminate the sort of review-level conjecture that occurs when a court evaluates whether an ALJ adequately considered evidence of obesity on record, but such a requirement also would relieve claimants–particularly represented claimants–of the responsibility for pleading their claims with specificity and would put the ALJ in the difficult position of having to discover and evaluate potential physical ailments that a claimant might have neglected to mention.

---

[3]The only references to obesity that the Court found in the record are in the "past medical history" section of a report of a medical examination performed prior to plaintiff's cesarean section in 1999, Tr. 162, and in a report of a medical reviewer, Tr. 237. At the time of the 1999 report, plaintiff was pregnant and weighed 170 pounds. Tr. 162. The medical reviewer concluded that plaintiff could perform light work despite his consideration of her obesity. Tr. 236-43.

In Bowser v. Commissioner of Social Security, 121 Fed. Appx. 231 (9th Cir. 2004), the plaintiff did not allege obesity in her benefits application or mention it at her hearing. There also were no diagnoses of obesity in the medical record, nor were there any admonitions from doctors for her to lose weight. The plaintiff nevertheless argued that the ALJ should have accounted for her obesity in his findings based on evidence in the record of her height and weight, which would put her in the "obese" category if the BMI calculation were made. Id. at 236. The Ninth Circuit found that the ALJ did not err in failing to account for obesity, and stated that, "[t]o hold otherwise under these circumstances would be tantamount to eviscerating Claimant's burden of showing the presence of a medically determinable impairment." Id. at 236-37; see also Cathey v. Barnhart, 61 Fed. Appx. 584, 586 (10th Cir. 2003) (finding no error where ALJ did not consider obesity because no diagnosis of obesity had been made, despite fact that plaintiff was "quite heavy").

The court found the facts of Bowser to be "easily distinguishable" from those of Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003). Bowser, 121 Fed. Appx. at 237 n.4. In Celaya, the court held that the ALJ had erred in failing to consider the plaintiff's obesity, even though the plaintiff had not raised the issue previously. The court found that obesity had been raised "implicitly" in the plaintiff's report of symptoms and that it was clear from the record that the plaintiff's obesity could exacerbate her other reported illnesses. Celaya, 332 F.3d 1181. The court also cited the plaintiff's pro se status, pointing out that the ALJ "was addressing an illiterate, unrepresented claimant who very likely never knew that she could assert obesity as a partial basis for her disability." Id. at 1183.

The Court finds the instant case analogous to the facts of Bowser. Plaintiff here, like the plaintiff in Bowser and unlike the plaintiff in Celaya, was represented by counsel in her administrative proceedings. The plaintiff in Celaya was four feet, nine inches tall and weighed 205 pounds. Id. at 1179. Plaintiff here is five inches shorter but forty-five pounds lighter, ostensibly making it less apparent that obesity is exacerbating plaintiff's other medical conditions and therefore deserves independent consideration.[4] Also like Bowser, the voluminous medical record here not only is devoid of any diagnosis of obesity, but plaintiff's treating physicians do not advise weight loss as a treatment for her back and heart ailments. Finally, the Court does not find obesity to be raised implicitly in plaintiff's list of symptoms, as the Court in Celaya found. While conditions such as sleep apnea, osteoarthritis, heart disease, or vertebral stenosis sometimes appear secondary to obesity, those conditions also occur, either separately or in concert, in people of ideal BMI. None of those conditions necessarily implies obesity. See, e.g., Davis v. Unum Life Ins. Co., 2005 WL 743082 (N.D. Ill. Mar. 31, 2005) (stating that plaintiff suffered from, *inter alia*, heart disease, sleep apnea, and spinal stenosis, but not mentioning obesity).

The Court also notes that plaintiff's obesity was considered explicitly by a medical reviewer, who determined that plaintiff was not disabled and capable of performing light work. Tr. 236-43. The ALJ relied on the determinations of the medical reviewer in reaching his findings, even though he did not explicitly address obesity in those findings. The ALJ

---

[4]The Bowser court does not mention plaintiff's height and weight, although it did find it apparent that the "record in this case does not reveal an obesity of such magnitude as to put the ALJ on notice that he should further explore and consider the issue in his analysis." Bowser, 121 Fed. Appx. at 237 n.4.

also had the opportunity to observe the extent of plaintiff's obesity in the administrative hearing. Those observations would have provided a better proxy for determining whether plaintiff's obesity limited her ability to perform light work than isolated height and weight measurements. While the ALJ's determination on obesity ideally would be a part of his written report, the Court does not find that the failure to address a condition in his written report that was not raised either implicitly or explicitly by plaintiff to be error.

Plaintiff also does not raise the issue of incontinence in her application or mention the issue at her hearing. While SSR 02-1P makes clear that obesity can be a disabling condition or contribute to other disabling conditions, plaintiff cites no such ruling related to incontinence. Nor does plaintiff suggest how occasional incontinence brought upon by stress contributes to her other alleged disabling conditions. The Court does not find the ALJ's apparent non-consideration of her occasional incontinence, either separately or in combination with other factors, to be error.

### B. Substantial Evidence

Plaintiff next asserts that the ALJ's determination was not supported by substantial evidence. Specifically, plaintiff says that "the ALJ focuses on those aspects of the medical evidence which support his eventual decision." Pl. Br. 7. Plaintiff cites the ALJ's omission of X-rays and an MRI taken on a visit to Dr. Edwin Scott on November 16, 1999, and parts of a medical opinion issued by Dr. Shahzad Ahmed on August 21, 2000. Id. at 8. Plaintiff states that the ALJ ignored Dr. Ahmed's opinion that plaintiff is

> quote short-statured, is quite significantly symptomatic, has pain in both legs on walking. Her functional capacity is about a block, most likely secondary to spinal stenosis. Numbness and tingling sensation in the left upper limb, secondary to spinal stenosis. She cannot stand for more than 10-15 minutes

and has episodes of palpitation, secondary to SVT, about 3-4 times a week.
Also has disrupted sleep, secondary to sleep apnea syndrome, which makes
her sleepy and tired most of the day.

Tr. 210. Dr. Ahmed presented no opinion regarding plaintiff's ability to perform light work-related activities.

In addressing plaintiff's condition related to her vertebral "fusion, osteoarthritis, and disc problems," the ALJ concluded that "while the claimant's impairment would limit her capacity to function, such as restricting her ability to reach overhead or use the hands, her condition is stable and would not rule out all work activity." Tr. 18. As to plaintiff's heart condition, the ALJ found that "the claimant's heart condition would rule out heavy or strenuous work but not work of a lighter variety." Id. Regarding her sleep apnea, the ALJ found that the condition "is manageable and does not preclude all work activity." Id. The ALJ then concluded that "while the claimant cannot perform medium, heavy or strenuous work, [plaintiff] retains the following residual functional capacity: light work with occasional stooping, twisting, crouching, and kneeling; no crawling, climbing or balancing; occasional reaching overhead; and occasional fine dexterity with the right dominant hand. She should be given a sit/stand option." Tr. 19.

Regarding the MRI and X-rays taken of plaintiff on the November 16, 1999, visit to Dr. Scott, plaintiff does not suggest, and it does not appear from the record, that the results of those tests differed significantly from the medical impressions cited by the ALJ in addressing plaintiff's vertebral problems. The tests revealed spinal stenosis, for which plaintiff has elected not to undergo surgery. Tr. 183.

Likewise, while the ALJ does not directly quote Dr. Ahmed's opinion regarding plaintiff's vertebral problems, heart palpitations, and sleep apnea, his conclusions regarding those conditions do not conflict with Dr. Ahmed's opinion. The ALJ acknowledges plaintiff's functional limitations, including her inability to walk or stand for long periods of time, in stating that she cannot perform medium or heavy work, cannot reach over her head, and should be given the option of standing or sitting. He recognizes her heart palpitations and concludes that she cannot perform heavy work. He also recognizes her sleep apnea, but finds it to be manageable based on her positive response to treatment.[5] Tr. 188, 189. The Court finds nothing in the ALJ's findings that is directly contradicted by the medical opinion of Dr. Ahmed, Dr. Scott, or any other physician who has examined plaintiff.

Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. In this case, the Court finds the ALJ's conclusions to be based upon substantial evidence. His decision is not at odds with the opinions of plaintiff's examining physicians and is supported by the findings of two medical examiners, each of which found plaintiff capable of performing light work. Tr. 217-32, 236-51. Accordingly, the ALJ's decision should not be overturned.

---

[5]The ALJ's finding that plaintiff's sleep apnea is manageable is supported by the rare mention of the condition in the notes of Dr. Scott, plaintiff's primary treating physician, after she received treatment.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 13th day of December, 2005, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE